IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

          v.                        11-CR-197-A

JOHN GROSS,

              Defendant.

_____

## PLEA AGREEMENT

The defendant, JOHN GROSS, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.


     I.   **THE PLEA AND POSSIBLE SENTENCE**

1.   The defendant agrees to waive indictment and to plead guilty to a two-count Information charging:


a) in Count 1, violation of Title 18, United States Code, Section 1341 (mail fraud), for which the maximum possible sentence is a term of imprisonment of 20 years, a fine of $250,000, a mandatory $100 special assessment and a term of supervised release of 3 years; and


b) in Count 2, violation of Title 26, United States Code, Section 7206(2) (aiding in the preparation of a false tax return),

for which the maximum possible sentence is a term of imprisonment of 3 years, a fine of $250,000, a mandatory $100 special assessment and a term of supervised release of 1 year.

c)    The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2.    The defendant understands that the Court must require restitution in the amount of $161,540 to be paid to Internal Revenue Service as part of the sentence pursuant to Sentencing Guidelines § 5E1.1 and Title 18, United States Code, Section 3663A.

3.    The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 2 years, without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in Paragraph 1 of this agreement.

## II.   ELEMENTS AND FACTUAL BASIS

4.   The defendant understands the nature of the offenses set forth in paragraph 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crimes:

### Count 1 (Title 18, United States Code, Section 1341

1)   That the defendant devised or used a scheme to defraud as alleged in the Information;

2)   That the receipt of money or property was the objective of the scheme; and

3)   That the defendant mailed or caused items to be mailed by use of the Postal Service (or an interstate delivery service) in furtherance of the scheme.

### Count 2 (Title 26, United States Code, Section 7206[2])

1)   That the defendant aided or assisted in, or procured, counseled, or advised in the preparation or presentation of a document in connection with a matter arising under the internal revenue laws;

2)   That the document was false as to a material matter; and

3)   That the defendant acted wilfully.

5.   The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

## Count 1 (18 U.S.C. § 1341)

### Summit Mall

a.   At all times pertinent herein, defendant JOHN GROSS operated David Gross Contracting (DGC), a plumbing, HVAC, and general contracting business out of premises located on Niagara Street in Niagara Falls, New York.  While the company bore the name of the defendant's son, defendant JOHN GROSS oversaw the operation of the company.

b.   In December of 2008, the Summit Mall, located at 6929 Williams Road, Wheatfield, New York, sustained damage, as a result of high winds, to the roof to include the rooftop heating and air conditioning units.   The Summit Mall, which was owned by Oberlin Plaza One (Oberlin), a Limited Liability Company, was an existing customer of DGC.  On December 28, 2008, a representative from the Summit Mall called defendant JOHN GROSS to report the damage.  Defendant JOHN GROSS initially sent a team of his employees to the Summit Mall to secure the mall and prevent further damage from the elements.

c.   Thereafter, employees of DGC, acting at the request and direction of the defendant JOHN GROSS, set out to obtain, by means of fraud and deception, two additional "bids", to be presented to a claims adjuster for the Hartford Insurance Company of the Midwest (Hartford), the insurance carrier for the Summit Mall.  Those bids were to be presented along with a DGC bid to cover the repairs to the damage to the roof and the rooftop heating and air conditioning units.

d.   The first fraudulent "bid" was simply concocted by DGC Employee, "S.R.", acting at the request and direction of the defendant JOHN GROSS.  Specifically, using letterhead bearing the name of a competing contractor (hereinafter "Competitor 1"), S.R. typed, fabricated, and submitted a false and fictitious "bid" in the name of Competitor 1.  That fraudulent "bid," dated January 2, 2009, in the name of Competitor 1, provided for the

installation of six roof top heating and air conditioning units at a total cost of $89,473.80.

e. With regard to the second fraudulent "bid," an employee of DGC, "W.W.," acting at the direction of defendant JOHN GROSS contacted another contractor, (hereinafter "Competitor 2"), to obtain a bid. DGC had a history of using Competitor 2 as a subcontractor for various DGC jobs. W.W. misled Competitor 2 by telling them that their bid would be for a subcontract related to DGC's contract to repair the Summit Mall. During the execution of a search warrant at DGC at 2104 Niagara Street, Niagara Falls, New York, on July 17, 2009, FBI Agents recovered a facsimile cover sheet designated as from Competitor 2 designated to "Gross Contracting". Attached to the facsimile was an estimate from Competitor 2 in the amount of $87,848.00, for the Summit Mall. Such "bid" was submitted on January 2, 2009.

f. Finally, on January 2, 2009, DGC submitted a bid with a cost of $79,770.00. That estimate, except for price was identical to the "bids" which were submitted at the direction of defendant JOHN GROSS in the names of both the Competitor 1 and Competitor 2. Specifically, each bid indicated that the equipment to be installed at specific locations on the roof of the Summit Mall consisted of: a York brand 5 ton heating and air conditioning unit; two (2) York brand 7.5 ton heating and air conditioning units; two (2) York brand 10 ton heating and air conditioning units; and a 2.5 ton mini split unit in specific locations on the roof of the Summit Mall. GROSS directed that all three bids be submitted to a Summit Mall employee to whom GROSS had previously provided, at a substantially reduced cost, repairs and improvements to such employees personal residence. Such employee, in turn, represented to his management that such bids were independently obtained.

g. Hartford hired an independent contractor from New Jersey to determine the reasonableness of charges for repairs to the Summit Mall caused by the damage.

h. On January 9, 2009, Hartford's local claims adjuster sent to the New Jersey contractor the DGC invoice for replacement of the heating and air conditioning rooftop units. In addition to the bid for the HVAC work submitted by DGC, Hartford also received an invoice from DGC documenting the emergency repairs completed. The bid

indicated that it was for both "emergency work" and "work in progress but not completed" and was dated January 8, 2009.  The bid was from DGC and totaled $193,390.00. That bid included a description which stated, ""HVAC-Contract: Six [6] new roof top units installed" with an amount of '$79,000.'"

i. Prior to February 25, 2009, Hartford insurance sent either by mail through the United States Postal Service or by way of interstate common carrier a check in the amount of $229,404.24 to Oberlin Plaza One LLC T/A/, PO Box 10810, Raleigh, NC 27605.  That check was negotiated and a portion of the proceeds were provided to DGC.

**Goodyear Chemical**

j. At all times pertinent herein, the Goodyear Tire & Rubber Company (Goodyear) had a Chemical Division which operated a plant, located at 5500 Goodyear Drive, Niagara Falls, New York, that made chemicals used in the tire manufacturing process.

k. In 2007 through 2009, Goodyear had a strict corporate purchasing policy which was utilized for both product and service purchases.  A Goodyear purchase was initiated when the employee (purchasing agent) requested the purchase.  Generally, Goodyear's policy required a competitive bidding process and it was the responsibility of the Goodyear purchasing agent to obtain the requisite bids, while such bids would be approved by someone other than the purchasing agent.

l. Defendant JOHN GROSS developed personal relationships with two of Goodyear's purchasing agents.  Defendant JOHN GROSS would, from time to time, over the course of such relationships, provide such purchasing agents with free charter fishing trips and other benefits, including providing, at substantially reduced costs or at no cost, various repairs and improvements to such purchasing agents' personal residences.

Goodyear Fraud 1

m. On or about December 31, 2007, a Goodyear check was mailed in the amount of $2,904.20 from Goodyear headquarters in Akron, Ohio, payable to DGC in Niagara Falls, New York.  That check, which was negotiated and

deposited into a DGC bank account, was reimbursement for services related to "Clean HVAC duct work" at Goodyear. Subsequent investigation revealed that DGC submitted its bid and was awarded that job, only after secretly receiving from the Goodyear purchasing agent, a bid previously submitted by a DGC competitor (hereinafter "Competitor 3"). Having received such bid, DGC was able to rig its own bid in order to undercut Competitor 3's bid, thus ensuring its securing the job. During the execution of a search warrant at DGC on July 17, 2009, a copy of the aforementioned bid submitted by Competitor 3 was recovered, along with a handwritten notation by defendant JOHN GROSS directing W.W. to meet with the Goodyear purchasing agent who had provided Competitor 3's bid to DGC in order to submit a lesser bid on behalf of DGC.

### Goodyear Fraud 2

m. On or about July 15, 2009, a Goodyear check was mailed in the amount of $19,002.60 from Goodyear headquarters in Akron, Ohio, payable to John J. Gross Contracting, in Niagara Falls, New York. That check, which was negotiated and deposited into a DGC bank account, was reimbursement for services related to "Three fire hydrants, One 4" PIV valve" in the amount $17,680.00 as well as other work completed by DGC which totaled $1,322.60. Subsequent investigation has revealed that DGC was awarded that job to provide those services only after it had fraudulently submitted to the Goodyear purchasing agent, in addition to its own bid, a fraudulent higher bid from Competitor 1.

### Count 2 (26 U.S.C. §7206[2])

o. The defendant JOHN GROSS directed the employees of DGC to keep a record of customer payments for services performed by DGC in a spiral notebook. The customer name, amount and how the payment was received, i.e., paid in person, by mail or brought in by an employee of DGC, were handwritten in the payment book.

p. The defendant generally reviewed the payment book on a daily basis. Checks to DGC that came in the mail were earmarked for deposit. Any other payments, currency or checks brought in by customers or employees, were kept separate and placed in the safe for the defendant.

q. The defendant directed employees who receive customer payments to have customers make their checks payable to "David Gross" instead of DGC.  The defendant endorsed these checks himself and directed DGC employees to cash these checks.  The defendant received all the currency from these negotiated checks.

r. At the direction of the defendant, the currency that came into DGC from customers and from negotiated checks from customers were never recorded in the Quick Books accounting software for DGC.  The 2007 Federal Corporate Income Tax Return of DGC was prepared using reports prepared from the data contained in Quick Books.

s. In the calendar year 2007, Customer payments totaling $458,772.00 were received for services performed by DGC, but were diverted by the defendant in the manner described herein.

t. The defendant engaged in above conduct, in the Western Judicial District of New York, which caused the corporation DGC to file a form 1120 U.S. Corporation Income Tax Return with the Internal Revenue Service which was false as to a material matter, specifically line 1c of form 1120 "Gross receipts or sales" and his conduct was willful, all in violation of Title 26 Section 7206(2).

u. Approximately $161,540 in tax loss is the amount involved in the defendant's relevant conduct encompassed in Count 2 of the Information which could be readily proven by the government against the defendant.

v. The above facts are set forth for the limited purpose of complying with Rule 11(b)(3) and are not intended to serve as a complete statement of the defendant's criminal conduct.


### III.  SENTENCING GUIDELINES

6.   The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

7.    The government and the defendant agree that pursuant to the Second Circuit's holding in <u>United States v. Gordon</u>, 291 F.3d 181, 190 (2d Cir. 2002), the offenses of conviction under Count 1 and Count 2 must be grouped pursuant to Guidelines §§ 3D1.2(d) and 3D1.3(b) and that the aggregate loss amount involved in Count 1 and Count 2 is more than $200,000 but less than $400,000.

8.    The government and the defendant agree that Guidelines §§ 2B1.1(a)(1) and 2B1.1(b)(1)(G) apply to the offenses of conviction and provides for a base offense level of 19.

9.    The government and the defendant agree that the following adjustment to the base offense level does apply:

a.    The 2 level upward adjustment of Guidelines § 3B1.1(a)[(b)(c)] (aggravating role in offense).

10.    Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offenses of conviction is 21.

11.    At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one

(1) level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of 18.

12.   It is the understanding of the government and the defendant that the defendant's criminal history category is II. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the pleas of guilty based on the Court's determination of the defendant's criminal history category.

13.   It is the understanding of the government and the defendant that, with a total offense level of 18 and criminal history category of II, the defendant's sentencing range would be a term of imprisonment of 30 to 37 months, a fine of $6,000 to $60,000, and a period of supervised release of 2 to 3 years. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the minimum and maximum penalties set forth in paragraph 1 of this agreement.

14.   The government and the defendant agree to the Sentencing Guidelines calculations set forth in this agreement and neither party will advocate or recommend the application of any other

Guideline, or move for any Guidelines departure, or move for or recommend a sentence outside the Guidelines, except as specifically set forth in this agreement. A breach of this paragraph by one party will relieve the other party of any agreements made in this plea agreement with respect to sentencing motions and recommendations. A breach of this paragraph by the defendant shall also relieve the government from any agreements to dismiss or not pursue additional charges.

15. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the pleas of guilty based on the sentence imposed by the Court.

## IV.   STATUTE OF LIMITATIONS

16. In the event the defendant's pleas of guilty are withdrawn, or convictions vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any other criminal offense involving or related to fraud, public corruption,

tax violations which is not time barred as of the date of this agreement.  This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty pleas or vacating of the convictions becomes final.

## V. <u>GOVERNMENT RIGHTS AND RESERVATIONS</u>

17.  At sentencing, the government agrees to take no position as to the specific sentence within the Guidelines range determined by the Court.

18.  The defendant understands that the government has reserved the right to:

a.    provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.    respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government; and

c.    modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information regarding the recommendation or factor.

19. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VI.   APPEAL RIGHTS

20. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 13, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence. The defendant further agrees not to appeal a restitution order which does not exceed the amount set forth in Section I of this agreement.

21. The defendant understands that by agreeing to not collaterally attack the sentence, the defendant is waiving the

right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

22.   The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 13, above, notwithstanding the manner in which the Court determines the sentence.  However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VII.   SEIZED PROPERTY/RESTITUTION

23.   On July 17, 2009, the Federal Bureau of Investigation seized the following property from the defendant JOHN GROSS:

a.   $7,711.00 in United States currency;

b.   $40,000.00 from two (2) HSBC bank drafts in the amount of $20,000 each, each of which are payable to the order of defendant JOHN GROSS and remitted by defendant JOHN GROSS;

c.   $20,000.00 in Key Bank money orders, payable to the order of defendant JOHN GROSS and remitted by Mark Cerrone Inc.;

d.   $2,000.00 from four (4) $500.00 blank HSBC Money orders;

e.   $200.00 from two (2) $100.00 blank HSBC Money orders;

f.   $5,000.00 from ten (10) $500.00 blank Western Union Money orders; and

g.   $200.00 from one (1) $200.00 blank Western Union Money order.

The above property totals the sum of $75,111.00 and is presently in the possession of the Federal Bureau of Investigation.  By this Agreement the defendant, JOHN GROSS, agrees to release the seized property to the Federal Bureau of Investigation for the transfer to the Clerk, U.S. District Court.  The seized property should be applied toward the criminal judgment of 1:92CR00236-001 entered against the defendant JOHN GROSS on January 22, 1997, in the amount of $489,394.00.  As of January 27, 2011, there remains due a restitution balance of $279,694.00 and a principal fine balance of $10,000.00 plus interest of $7,838.63 for a total of $297,532.63. The Clerk, U.S. District Court shall first apply payments to the restitution principal due and owing as a result of the criminal judgment of 1:92CR00236-001.  The defendant JOHN GROSS further agrees to execute any documents or authorize any financial instruments that the government deems necessary to accomplish the payments as outlined above.

## VIII.   TOTAL AGREEMENT AND AFFIRMATIONS

24.   This plea agreement represents the total agreement between the defendant, JOHN GROSS, and the government.   There are no promises made by anyone other than those contained in this agreement.   This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

WILLIAM J. HOCHUL, JR.
United States Attorney
Western District of New York

BY: _____
JAMES P. KENNEDY, JR.
Assistant U.S. Attorney

Dated: July _26_, 2011

I have read this agreement, which consists of 17 pages.   I have had a full opportunity to discuss this agreement with my attorney, Herbert L. Greenman, Esq.   I agree that it represents the total agreement reached between myself and the government.   No promises or representations have been made to me other than what is contained in this agreement.   I understand all of the consequences of my plea of guilty.   I fully agree with the contents of this

agreement.   I am signing this agreement voluntarily and of my own free will.


_____
JOHN GROSS
Defendant

Dated: July 26 , 2011


_____
HERBERT L. GREENMAN, ESQ.
Attorney for the Defendant

Dated: July 26 , 2011