IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

      v.                                          11-CR-197-A

JOHN GROSS,

          Defendant.

───────────────────────────────

## SENTENCING REPLY MEMORANDUM

Previously, the government filed a statement with respect to sentencing factors. (Docket Item #7). In that statement, the government indicated that it was advocating for the Sentencing Guidelines calculations set forth in the parties' plea agreement. That agreement calculated the defendant's sentencing range, on his prior pleas of guilty to violation of Title 18, United States Code, Section 1341 (mail fraud) and Title 26, United States Code, Section 7206(2) (aiding in the preparation of a false tax return), to be principally a term of imprisonment of 30 to 37 months.

Since that time, the defendant filed a sentencing memorandum (Docket Item #10), which, among other things, included over fifty (50) letters from a wide-range of individuals which attest to the defendant's good character. While the government does not dispute much of what is contained in those letters, it is compelled to call to the Court's attention two (2) relatively recent developments

which it has learned, which it believes that this Court, in assessing the information set out in the numerous letters submitted on the defendant's behalf, ought also to have before it.  The government believes that this information may bear upon the Court's consideration of such letters and more broadly upon the factors that this Court, pursuant to Title 18, United States Code, Section 3553(a), is obligated to consider in imposing sentence.

First, on or about December 29, 2011, the undersigned received information, in the form of FBI-302's, which suggested that the defendant, since the July 2009 execution of the FBI search warrant at his business, has continued to receive cash and personal checks as payment for services rendered by David Gross Contracting, Inc. (DGC).[1]  The checks and currency received by defendant are presumably retained by defendant and are not reported to DGC as income to the business.  This conduct is, of course, identical to that conduct which resulted in defendant's plea to a tax count. This ongoing conduct by defendant Gross might help to inform the Court's answer to the question posited by defense counsel in his sentencing memorandum, "[W]ho is John Gross?"  (Docket Item #10, p.7).  As defendant's own bookkeeper put it during his December interview by the FBI, defendant "can't change his ways" as "he does

---

[1]The government immediately provided copies of these FBI-302 Reports to both the United States Probation Department as well as defense counsel.

- 2 -

not know any different." Clearly, counsel's question may be answered, at least in part, by noting that John Gross is someone who refuses to play by the rules.

While the multitude of letters submitted by defense counsel clearly demonstrate that defendant does have certain admirable traits, those letters alone do not tell the whole story. While the letters highlight the private benefit that defendant may have brought to certain individuals, they fail even to mention the public harm caused by defendant's fraudulent conduct. Indeed, the letters fail to capture the ever-present fog which defendant's fraudulent conduct cast over the business climate in Niagara Falls. By affording him an unfair competitive advantage, defendant's business practices eclipsed the transparency which typically permeates a free and open marketplace.

Furthermore, it must be noted that the FBI investigation has shown that defendant Gross either committed crimes or attempted to commit crimes based on his relationship with at least some of those who wrote letters on his behalf. To the extent that the information set forth below may inform the Court's consideration of such letters, the government wishes to call to the Court's attention the following information, obtained during the course of

this investigation,[2] which relate to some of the letters provided on behalf of the defendant:

Letter written by Ronald Anderluh (Docket Item 10-1, p. 34)

Ronald Anderluh was the former manager of the Summit Mall. Anderluh was fired by the owner and a new manager took over.  That new manager was interviewed and advised that he discovered work being done by defendant's company to space which was not rented.  Such work made no business sense because a new renter would necessarily construct its store to match an established floor plan.  The new manager estimated that work done by Gross, at Anderluh's direction, totaled a couple of million dollars.  The facilities manager of the Summit Mall was also interviewed and advised that he believed that a lot of the work was substandard and unnecessary.  The excess expenditures may have contributed to the decision by the owner of the Summit Mall no longer to operate the mall.  (While the FBI  did not ask the owner that specific question, they were told by the owner that he could not keep putting money into the mall and ultimately he had to close it).

---

[2]On January 3, 2012, the government provided to the United States Probation Department and to defense counsel, eight (8) different FBI 302 reports which provide the basis for the information presented below.

<u>Letter written by Clemente Pasquale</u> (Docket Item 10-1, p. 33)


    Clemente Pasquale owned a company called Colt Construction.
In the course of the investigation, the FBI learned of a bid rigged
job at the Bon-Ton Store in the Summit Park Mall.   The FBI
determined Gary Eastman, an employee of the Summit Park Mall who
notably was hired by Anderluh (the aforementioned former manager of
the Summit Park Mall), provided two estimates for the job to the
new manager of the Summit Park Mall.   The new mall manager
believed that these estimates were independently obtained by
Eastman.   The estimates were on a David Gross Contracting (DGC)
letterhead as well as a Colt Construction letterhead.   The DGC
letterhead estimate had a lower price.   Gross and Pasquale had
worked together on many projects.   Eastman was the Summit Mall
employee Gross admitted, in the factual basis for his plea, to whom
he had provided things of value to and fictitious estimates.[3]


    <u>Letter written by Patti Weiss</u> (Docket Item 10-1, p. 7)


    Patti Weiss is the wife of Wally Weiss an employee of DGC.
Wally Weiss was one of the employees who Gross admitted, in the

---

    [3] Pasquale was interviewed by the FBI.  He claimed that he
no longer resides in New York State, and the FBI indicated that
he was evasive concerning the estimate, and eventually stopped
the telephonic interview.

factual basis for his plea, was used to prepare a fictitious estimate that he (Gross) ultimately submitted to the Summit Mall. Patti Weiss worked for Clover Management (CM) a real estate management and holding company. The FBI investigation determined DGC did work for CM totaling hundreds of thousands of dollars. It was also determined that CM styled their checks payable to David Gross rather than David Gross Contracting. As a result, Gross was able to have the checks cashed as if they were personal checks and he kept the cash on some occasions. The owner of CM was unable to determine why the checks were styled David Gross rather than David Gross Contracting and Joseph changed the practice. Patti Weiss is no longer employed by CM.

<u>Letter written by Alan Golkin</u> (Docket Item 10-1, p. 3)
<u>Letter written by Arthur Curcione</u> (Docket Item 10-1, p. 3)

The investigation determined that defendant Gross would have Alan Golkin, a former attorney, draft claims against the Niagara Falls Water Board for Niagara Falls residents. Gross would direct residents who had damaged water and sewer lines to file claims against the NFWB. In a claim filed on behalf of Arthur Curcione, a fraudulent invoice prepared by or at the request of defendant Gross was included. The invoice was for concrete work and was on the letterhead of contractor Chad Robertson. Robertson was unaware of the invoice or that Gross was utilizing his letterhead.

Attorney John Mattio who is also a Niagara Falls based attorney was interviewed.  Mattio advised he would file the legal claims drafted for the Niagara Falls residents by Golkin.  Mattio's office mate James Faso used to handle the claims but then Mattio took them over.  Mattio was unaware he filed a claim that included the fraudulent Chad Robertson invoice.

      DATED:    Buffalo, New York, January 4, 2012.

                    Respectfully submitted,

                    WILLIAM J. HOCHUL, JR.
                    United States Attorney


            BY:    s/JAMES P. KENNEDY, JR.
                    Assistant U.S. Attorney
                    Western District of New York
                    138 Delaware Avenue
                    Buffalo, New York  14202
                    (716)843-5892
                    JP.Kennedy@usdoj.gov

TO:  Herbert L. Greenman, Esq.
     United States Probation Department
      Attn: USPO Lindsay Maza

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

          v.                                    11-CR-197-A

JOHN GROSS,

               Defendant.

─────────────────────────────────────


**CERTIFICATE OF SERVICE**


    I hereby certify that on January 4, 2012, I electronically filed the foregoing **SENTENCING REPLY MEMO** with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case:


Herbert L. Greenman, Esq.
U.S. Probation Department
  Attn: USPO Lindsay Maza


                                        s/KAREN S. BARONE